# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **PAUL QUINN COLLEGE,**<br><br>          **Plaintiff,**<br><br>v.<br><br>**THE SOUTHERN ASSOCIATION OF COLLEGES AND SCHOOLS COMMISSION ON COLLEGES, INC.,**<br><br>          **Defendant.** | 1:09-cv-2327-WSD |

## OPINION AND ORDER

This matter is before the Court on Paul Quinn College's Motion to Alter or Amend the Judgment and Brief in Support [67].

## I.    BACKGROUND

Paul Quinn College ("Paul Quinn" or "the College") is a private, four-year, church-affiliated, historically-black college in Dallas, Texas.[1] The Southern Association of Colleges and Schools Commission on Colleges, Inc. ("SACS") is a non-profit membership corporation, whose members include public and non-public schools in eleven southern states, including Texas. SACS requires its members to

---

[1] Additional background facts are set forth in the Court's January 19, 2011, Order in this action.

comply with the *Principles of Accreditation: Foundation for Quality Enhancement* (the "Principles"). Paul Quinn became a member of SACS in 1972, and SACS most recently affirmed Paul Quinn's accreditation in 1997. SACS' recent decision to deny Paul Quinn reaccreditation forms the basis for this dispute.

In May 2006, the College sought to renew its accreditation with SACS. In accordance with its standard procedures, SACS appointed its Vice President, Dr. Lord, as SACS' liaison with the College for the review process. In October 2006, a preliminary accreditation review report concluded that the College had failed to comply with twenty-one of the Principles. SACS declined to renew Paul Quinn's membership and placed Paul Quinn on probation for twelve months.

In June 2008, SACS extended Paul Quinn's probation for another twelve months. A Special Committee again evaluated the College and issued a report indicating that the College had not complied with the following Principles: (1) CR 2.11.1 (Financial Resources); (2) CS 3.10.1 (Financial Stability); and (3) CS 3.3.1 (Institutional Effectiveness). According to SACS' procedures, failure to meet any one of these three provisions justified removal of the College from membership in SACS. On August 24, 2009, SACS removed the College from its membership.

On August 25, 2009, Paul Quinn filed this action against SACS. Paul Quinn argued that SACS had violated its common law due process rights in the

accreditation review process and under the Higher Education Act when SACS withdrew Paul Quinn's accreditation. On December 7, 2009, Paul Quinn filed an Amended Complaint, adding claims for breach of contract, tortious interference with contracts, and tortious interference with prospective business relationships.

On June 1, 2010, SACS filed its Motion for Summary Judgment on all of the claims asserted in this action. In response to SACS' summary judgment motion, the College argued that SACS had denied it common law due process because (1) SACS failed to follow its own standards and procedures in removing it from membership because SACS' Vice President, Dr. Lord, participated in the accreditation decision, (2) SACS' decision to remove the College from membership due to its poor financial condition was not based on substantial evidence, and (3) SACS changed the standards used to measure institutional effectiveness during the accreditation process.

On January 19, 2011, the Court issued its order granting SACS' Motion for Summary Judgment (the "Order" [65]). The Court rejected the College's arguments in opposition to the motion, concluding that: (1) even if Dr. Lord participated in the accreditation decision in violation of SACS' rules, the undisputed evidence was that the final accreditation decision was made independently of his alleged involvement; (2) there was not any evidence to show

that SACS acted arbitrarily or unreasonably in denying reaccreditation based on the College's precarious financial condition; and (3) SACS did not, as the College contended, change its review standards midway through the accreditation process. The Court also granted summary judgment on Paul Quinn's remaining claims.

On February 17, 2011, Paul Quinn filed its Motion to Alter or Amend the Judgment ("Motion to Amend") pursuant to Federal Rule of Civil Procedure 59(e).

## II. DISCUSSION

### A. Standard for Granting a Motion to Amend Judgment

A motion under Rule 59(e),[2] which permits a party to move for relief from a judgment, is granted only under limited circumstances. To alter or amend a judgment, the moving party must show either "an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice." United States v. Battle, 272 F. Supp. 2d 1354, 1357 (N.D. Ga.

---

[2] SACS argues that "Paul Quinn characterizes its motion as one to 'alter or amend the judgment' pursuant to rule 59(e), but even upon a cursory review it is more appropriately described as a 'Motion for Reconsideration.'" (Def's Br. [68] at 1.) The Court notes that a motion to amend under Rule 59(e) differs from a motion for relief from judgment under Rule 60. "A motion requesting the setting aside of summary judgment and a trial on the merits of the case is best characterized as a Rule 59(e) motion." Rance v. D.R. Horton, Inc., 316 F. A'ppx 860, 863 (11th Cir. 2008) (citing Mays v. United States Postal Service, 122 F.3d 43, 46 (11th Cir. 1997)). Here, the College seeks to set aside the summary judgment entered and to proceed to a trial on the merits. The Court concludes that even if the College brought its motion under Rule 60, which it has not, it has not shown a basis for relief from the Court's judgment.

4

2003). The Rule 59(e) movant "must demonstrate why the court should reconsider its decision and set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." Id. (internal quotations omitted). The decision whether to grant a Rule 59(e) motion is "committed to the sound discretion of the district judge." Am. Home Assurance Co. v. Glenn Estess & Assocs., 763 F.2d 1237, 1238-39 (11th Cir. 1985). "[A] Rule 59(e) motion [cannot be used] to relitigate old matters, raise argument or present evidence that could have been raised prior to entry of judgment." Michael Linet, Inc. v. Vill. of Wellington, 408 F.3d 757, 763 (11th Cir. 2005). "The function of a motion to alter or amend a judgment is not to serve as a vehicle to relitigate old matters or present the case under a new legal theory [or] to give the moving party another 'bite at the apple' by permitting the arguing of issues and procedures that could and should have been raised prior to judgment." Mincey v. Head, 206 F.3d 1106, 1137 n. 69 (11th Cir. 2000).

In its Motion to Amend, Paul Quinn argues that the Court made manifest errors of law in finding that: (1) Dr. Lord's alleged rules violations did not fundamentally affect Paul Quinn's reaccreditation process; (2) Paul Quinn failed to proffer any evidence that SACS' changes to its Principles affected the reaccreditation process; and (3) SACS' decision to remove Paul Quinn from

5

membership was based on substantial evidence. Paul Quinn does not contend there was an intervening change in controlling law or the availability of new evidence requiring the Court's judgment to be amended.

B. Dr. Lord's Purported Rule Violations

Paul Quinn originally argued that summary judgment was inappropriate because a genuine issue of material fact remained as to whether SACS followed its internal rules when revoking Paul Quinn's membership. SACS' rules prohibit SACS staff members from participating in final accreditation decisions.[3] The College argued that SACS' Vice President, Dr. Lord, participated in the accreditation decision by editing the Special Committee's draft report. Specifically, Dr. Lord deleted a paragraph that attributed Paul Quinn's ongoing financial difficulties to declining enrollment, which was the result of its rising admission standards. Dr. Lord replaced that paragraph with a statement that Paul Quinn's finances did not indicate financial stability.

---

[3] SACS' rules provide that:
> Staff members of the Commission on Colleges are expected to advise and inform the Commission and its committees on matters relative to an institution. They should offer advice or provide information at their own initiative or at the request of the Commission or its members. Such advice and information do not supplant the peer review process, but rather provide additional insight in reaching an informed decision.

(Df's Br. [68] at 15; SACS' Standing Rules, Staff Relationship to the Commission on Colleges and its Committees, Policy Statement.)

6

In its Order, the Court concluded that even if Dr. Lord's edits constituted "participation," Paul Quinn did not offer any evidence that Dr. Lord's edits influenced the Special Committee's decision-making process. The evidence before the Court was the affidavit from the Chair of the Special Committee, Dr. Burnett. Dr. Burnett claimed that Dr. Lord did not influence the Special Committee's decision not to reaccredit the College. Based on this evidence, the Court found that Paul Quinn failed to show that the alleged rule violation caused it any injury or otherwise affected the accreditation process. See Hiwassee Coll., v. S. Ass'n of Colls. & Schs., 490 F. Supp. 2d 1348, 1351 (N.D. Ga. 2007) (rejecting institution's conflict of interest claim because college could not show that any conflict of interest caused its alleged injury).

Paul Quinn now contends that the Court "erroneously found that [Paul Quinn] has not offered any evidence to support its claim that Dr. Lord's actions were fundamental to the decision to remove Paul Quinn from SACS' membership or that SACS' ultimate decision was influenced by Dr. Lord's revisions."[4] (Pl's

---

[4] Paul Quinn also states that "[i]n its Opinion, the Court does not dispute that plaintiff demonstrated that SACS violated its own rules in permitting a SACS staff member—Dr. Gerald Lord—to revise a report regarding Paul Quinn's compliance with the Principles." (Pl's Br. [67] at 7.) Paul Quinn misrepresents the Court's findings. The Court also did not find that Dr. Lord's edits violated SACS' policies. The Court found that even if the revisions violated SACS' policies, Paul Quinn had

7

Br. [67] at 7-8) (quoting Order [65] at 16.) The College argues that "Dr. Lord's revision to the critical issue of financial stability clearly demonstrates Dr. Lord's participation in the committee's determination that Paul Quinn was not in compliance with the Principles." (Id. at 8.) As the Court noted in its January 19, 2011, Order, and notes again now, the undisputed evidence is that the edits made by Dr. Lord did not influence the committee's decision and there is no evidence the peer review process was supplanted by the edits made. (See Df's Br. [68] at 15; SACS' Standing Rules, Staff Relationship to the Commission on Colleges and its Committees, Policy Statement.) While Dr. Lord's edits removed the paragraph attributing Dr. Lord's financial difficulties to declining enrollment, this wording change did not affect the underlying conclusion that Paul Quinn's financial condition was inadequate. Paul Quinn does not offer any new facts and no new evidence to support its current claim that the edits influenced SACS' decision or conclusion. The College simply speculates that the edits were instrumental in the committee's decision. Dr. Burnett's sworn, undisputed affidavit testimony contradicts and discredits the College's argument that the edits affected the final accreditation decision. Miquel v. Metro. Life Ins. Co., 200 F. A'ppx. 961, 968-69 (11th Cir. 2006) (affirming grant of summary judgment where plaintiff failed to

---

"failed to show the alleged rule violation caused it any injury or otherwise affected the accreditation process." (Id. at 16.)

present "any evidence to rebut or contradict" a sworn affidavit from an individual with knowledge).

Paul Quinn next characterizes Dr. Burnett's statements as self-serving and claims they are "insufficient to foreclose any question of fact insufficient to foreclose any question of fact as to whether Dr. Lord's concededly wrongful participation was fundamental to SACS's Decision [sic] to revoke Paul Quinn's accreditation." (Pl's Br. [67] at 9.) The College does not offer any authority for the principle that an affidavit, from someone with knowledge, "is insufficient to foreclose any question of fact" when, as here, the opposing party did not offer any evidence to dispute Dr. Burnett's testimony. See <u>Miquel</u>, 200 F. A'ppx. at 968-69.

    C.    <u>Standards for Institutional Effectiveness</u>

In the January 19, 2011, Order, the Court addressed, at length, the College's argument that a claimed change in the Principles violated the College's common law due process rights in the accreditation review process. The Court considered at length the 2002 edition of the Principles (effective from 2002 to 2006), the 2007 interim version, and the current version, issued in 2008. The Court specifically addressed Paul Quinn's argument that the Interim Principles required, for the first time, that Paul Quinn assess student learning outcomes at the individual student

9

level. After studying the language of the 2002 Principles and the record in this case, the Court found it undisputed that the 2002 Principles required Paul Quinn to assess student learning outcomes at the individual student level. (Order [65] at 21-23.) The 2002 Principles required schools to identify expected outcomes for its education programs, which included all campus learning programs and course work, whether conduct on campus, off campus, or by distance learning technologies, and for which academic credit is given. The Principles required schools to (1) identify expected outcomes for each education program, (2) assess whether it achieves those outcomes, and (3) provide evidence of improvement based on analysis of the outcome assessment results. (See id. at 22-23.)

The Court also noted that SACS presented significant evidence that it has evaluated student learning outcomes at the student level since 2002. (Id. at 23.) SACS offered the 30(b)(6) testimony of its representative, who testified that SACS did not change its institutional requirements from 2002 through 2008. (Id.) The Interim and 2008 Principles simply restated what the 2002 Principles already required.

In its Motion to Amend, Paul Quinn simply rehashes the arguments it raised on summary judgment. The College repeats that it presented sufficient evidence to create a disputed issue of material fact as to whether the textual changes in the

Principles unfairly affected its reaccreditation.[5] (Pl's Br. [67] at 11.) The Court addressed each of these arguments at length in its Order. (See Order [65] at 21-30.) Paul Quinn does not offer any new evidence, change in controlling law, or any clear error in the Court's January 19, 2011, decision. The College contends only that the Court incorrectly interpreted the evidence and reached the wrong conclusion. This is not a basis to amend a judgment under Federal Rule of Civil Procedure 59(e). See Michael Linet, Inc. v. Vill. of Wellington, 408 F.3d 757, 763 (11th Cir. 2005); Mincey v. Head, 206 F.3d 1106, 1137 n. 69 (11th Cir. 2000).

D. Paul Quinn's Financial Status

SACS largely based its decision to deny the College reaccreditation on the College's precarious financial position. SACS concluded that Paul Quinn's financial condition deteriorated during the review process and that its net worth and total assets dropped during the relevant timeframe. SACS ultimately

---

[5] The College argues that because it demonstrated that SACS changed the text of the Principles, it satisfied its burden of presenting a genuine issue of material fact as to whether SACS gave Paul Quinn due process. (Pl's Br. [67] at 10.) The Court notes that the Eleventh Circuit has never decided whether accrediting agencies "have a common law duty to employ fair procedures when making decisions affecting their members." Hiwassee Coll. Inc. v. S. Ass'n of Colls. & Schs., 531 F.3d 1333 (11th Cir. 2008). However, here, the Court finds that even if there is common law due process rights in the accreditation process, the undisputed facts here do not support a violation of due process rights.

concluded that the College did not comply with Principles CR 2.11.1 and CS 3.10.1, both of which relate to finances.

Paul Quinn argued that SACS' decision to deny reaccreditation was arbitrary and unreasonable. The College contended on summary judgment and contends again now that SACS erred by (1) basing its decision on outdated financial information, (2) treating Paul Quinn's settlement with one of its vendors (the "Sodexco Settlement") as a negative instead of a positive, and (3) treating a Department of Education demand that the College obtain a $465,000 letter of credit as a negative. The Court evaluated each of Paul Quinn's arguments and noted that SACS' interpretations of its financial stability requirements were entitled to deference. St. Andrews Presbyterian College v S. Ass'n of Colleges & Schs., Inc., 679 F. Supp. 2d 1320, 1329 (N.D. Ga. 2009) ("Accrediting agencies are to be afforded great deference in their interpretation of their substantive rules, and these interpretations should be upheld unless 'clearly erroneous.'"). Based on this standard, the Court found that SACS acted reasonably, and not arbitrarily. The College cannot use a Motion to Amend to relitigate these issues. See Michael Linet, Inc., 408 F.3d at 763; Mincey, 206 F.3d at 1137 n. 69.

Finally, the College suggests that the Court did not apply the proper standard of review when granting SACS' motion for summary judgment. In its Order, the

Court stated that "SACS has presented ample evidence supporting its decision that Paul Quinn had outstanding financial problems and shortcomings." (Order [65] at 19.) The College argues that:

> Whether SACS has presented ample evidence is not the question in the context of a motion for summary judgment. In deciding a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'

(Pl's Br. [67] at 15-16 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).)

The Order explained that "SACS' interpretations of its requirements related to financial stability and a sound financial base are entitled to deference." (Order [65] at 19 (citing Thomas M. Cooley Law Sch. V. Am. Bar Ass'n, 459 F.3d 705, 714 (6th Cir. 2006)). The Court found that "Paul Quinn failed to show that it was denied common law due process, or that SACS' decision to terminate the College's accreditation based on Paul Quinn's strained financial condition was arbitrary, unreasonable, and capricious." (Id.) Based on these findings, the Court concluded that:

> [T]he record does not show there is any disputed evidence regarding SACS' decision to revoke the College's accreditation and there is no dispute about what SACS used to reach this conclusion. Based on the facts here, the Court necessarily would conclude, as a matter of law, that SACS did not act arbitrarily and unreasonably, or abuse the discretion granted to

13

> it as an accrediting agency, in not renewing the College's accreditation. In short, the review procedure here was, as a matter of law, fair.

(Id. at 35.) The Court applied the proper standard on summary judgment and Paul Quinn's arguments are without merit. The Court is required to deny the College's Motion to Amend.

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Paul Quinn College's Motion to Alter or Amend the Judgment [67] is **DENIED**.

**SO ORDERED** this 19th day of July, 2011.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE